Case: 3:04-cv-00680-bbc Document #: 236 Filed: 02/21/06 Page 1 of 10

Document Number: 236
Case Number: 04-C-0680-C
United States District Court
Western District of Wisconsin
Theresa M. Owens
Filed/Received
02/21/2006 03:24:52 PM CST

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THIRD WAVE TECHNOLOGIES, INC.,

                Plaintiff,

v.

STRATAGENE CORPORATION,

                Defendant.

OPINION AND ORDER

04-C-0680-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This patent infringement case is before the court on plaintiff Third Wave Technologies, Inc.'s motion for an award of attorney fees and expenses pursuant to 35 U.S.C. § 285 in the amount of $4,244,636. Not surprisingly, defendant Stratagene Corporation opposes the amount sought on a number of grounds.

First, defendant asserts that the court should not award attorney fees and costs in this case because the award of treble damages in this case more than adequately compensates plaintiff for the expenses it incurred in prosecuting the case. In making this assertion, defendant ignores the well settled law that district courts can award both treble damages and attorney fees in cases found to be exceptional. E.g., SRI International, Inc. v. Advanced Technology Laboratories, Inc., 127 F.3d 1462 (Fed. Cir. 1997) (upholding award of treble

1

damages and attorney fees); 35 U.S.C. § 284 and § 285 (providing separately for awards of treble damages and attorney fees). Instead, it relies upon a two-paragraph order of the Court of Appeals for the Federal Circuit in <u>Paper Converting Machine Co. v. Magna-Graphics Corp.</u>, 788 F.2d 1536, 1537 (Fed. Cir. 1986). In that case, the court was addressing an application for an award of fees for an appeal of one remaining issue in a case. Although it is not clear from the court of appeals' abbreviated decision, it appears that the district court had awarded treble damages to the patent holder but had denied it an award of attorney fees, possibly for the entire case. (The published decisions of the district court do not supply the missing information about the attorney fees or what defendant was appealing.) Without more information about the circumstances of the case, it is hard to know what point the court of appeals was making. It stands to reason, however, that if the court was instituting a new approach to the statutory scheme allowing for awards of both enhanced damages and attorney fees and suggesting that attorney fee awards should not be made when treble damages are awarded, it would have explained its thinking in an order longer than two paragraphs.

 I am satisfied that in this case it is proper to award attorney fees and costs to plaintiff in addition to the treble damages award made previously. Awards for both are common when a case is exceptional, as this one is.

 Second, defendant challenges the hourly rates charged by plaintiff's attorneys, which

2

range from $575 an hour for its lead counsel to $265 an hour for a second-year associate. Defendant contends that local rates are the presumptively reasonable ones and that plaintiff is barred from seeking reimbursement for fees that exceed those charged in Madison, where this case was tried. It has filed the affidavits of two Madison lawyers in which they aver that fees greater than $375 an hour are outside the prevailing market rate in this community for intellectual property cases.

In arguing that the local rate is the presumptively reasonable one, defendant relies on language in Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc., 246 F. Supp. 2d 753 (S.D. Ind. 2003), that "[i]n the Seventh Circuit, the general presumption is that the relevant rates are those where the forum court is located." Id. at 764. I suspect that defendant relies upon a non-precedential district court opinion rather than an appellate decision because the appellate decisions in this circuit do not support its challenge.

As a general rule, the court of appeals looks to the hourly rates claimed by counsel as the "presumptively appropriate" rate. Gusman v. Unisys Corp., 986 F.2d 1146, 1151 (7th Cir. 1993). When "an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when evaluating" the reasonableness of the rate sought. Mathur v. Board of Trustees of Southern Illinois University, 317 F.3d 738, 743-44 (7th Cir. 2003). See also Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 551 (7th Cir. 1999); People Who Care v. Rockford Board of

3

Education, 90 F.3d 1307, 1311 (7th Cir. 1996).  Although the actual rate charged is the starting point, courts are free to consider both whether local lawyers could have done as well and whether any other reason is shown for not using them.  If courts believe that the higher fees were not necessary to obtain success in suit, they are free to reduce the fee award. Mathur, 317 F.3d 743-44 (citing Chrapliwy v. Uniroyal, 670 F.2d 760, 768 (7th Cir. 1982)); Eli Lilly & Co., 246 F. Supp. 2d 753.

  In cases as technically complex as this one, it is common for firms to seek representation by out-of-town counsel, even if the firms have to pay higher fees for such representation.  It would have been difficult and probably impossible for plaintiff to have found a firm in Madison with the resources, knowledge of the technical field, lack of conflicts with other clients and time available to prosecute this case successfully.  No firm in Madison would have had the experience of having tried at least one other suit involving the same subject matter as did the firm plaintiff hired.  This made the choice to go outside Madison an easy one.

  The idea that defendant is contesting plaintiff's use of a national firm is somewhat risible when one considers defendant's own conduct.  It did not hire a local firm to be its lead counsel at trial.  Instead, it hired a prominent firm from McLean, Virginia.  For its post-trial work, it has hired lawyers from a firm in Portland, Maine.  In its brief, defendant defends its choice of a national firm as merely a response to plaintiff's choice of an out-of-

town firm. What more does it need to say to defeat its own argument? If defendant did not believe that any firm in Madison could represent its interests adequately, on what ground can it contend that plaintiff should be limited to a local firm in its own choice of counsel?

Had defendant submitted affidavits showing that firms such as its own did not charge the hourly rates that plaintiff's attorneys charged, defendant might have convinced me that the rates need closer review. In the absence of such evidence, I see no reason to conclude that the hourly rates that plaintiff's attorneys charged are excessive. As defendant's counsel are wont to do, they forget that I presided over the trial. That means that I have a clear sense of the complexity of the case and its subject matter. Prosecuting this case was difficult; not all that many lawyers would have been qualified to do so, as defendant's trial lawyer tried to assure me. Trial transcript at 1718: "[Clients] hire people with my type of a background and [plaintiff's counsel's] type of a background because we can actually add value because we don't have to be taught, in theory."

When plaintiff made the decision to hire expensive, out-of-town counsel, it had no guarantee that it would prevail in its suit, let alone that it would be eligible for an award of attorney fees. The evidence at trial showed that it is a small company, with limited resources. Its willingness to pay the rates charged by its attorneys is the strongest kind of evidence that it believed it needed to engage a large firm with the resources and capabilities to prosecute this case effectively. This was not a straightforward case on a patent that was

5

about to expire, as in Eli Lilly & Co., 264 F. Supp. 2d 753; it was plaintiff's attempt to protect its core intellectual property and stay in business.

In short, I am not persuaded that the starting point in determining the reasonableness of plaintiff's counsel's hourly rate should be the rates charged in the Madison market. Because this is defendant's only argument to support its contention that the hourly rate is excessive, its challenge to that rate is denied.

Third, defendant contends that the nearly 12,000 hours for which compensation is sought is an unreasonable amount that should be reduced by half. It objects to the number of lawyers that worked on the case, arguing that the sheer number suggests considerable duplication of effort. (For this argument, they continue to rely on the district court decision in Eli Lilly & Co., 264 F. Supp. 2d 753, without acknowledging the material distinctions between that case and this one.) As with the challenge to the hourly rate, defendant weakens its argument by its inability or unwillingness to show that its counsel were able to defend the suit with fewer lawyers and support staff. A look around the courtroom during trial would have convinced any onlooker that both sides of the room were packed with personnel: lawyers, paralegals, technical support staff and clerical assistants.

Moreover, it hardly becomes defendant to attack the number of hours that plaintiff's attorneys spent in prosecuting the case, when defendant was responsible for much of the time plaintiff's attorneys were required to expend. I identified much of that unnecessary

6

work in the opinion and order addressing the parties' post-trial motions. Op. & Order entered Dec. 16, 2005, Dkt. #203. I will add only that much of the work was foisted upon plaintiff at inconvenient times, such as in the midst of trial or in the face of short deadlines, which made it more costly.

Defendant argues that the 11,846 hours spend by plaintiff's counsel is exorbitant on its face. I am unpersuaded, in part because I know how many hours I spent deciding the motions for summary judgment and post-trial motions. It is understandable that plaintiff's counsel spent as many hours as they claim responding to defendant's motions, many of which were baseless or misleading or both, as well as briefing plaintiff's own motions, taking and defending depositions, undertaking other kinds of discovery and preparing for trial. Nevertheless, I would look closely at the billing entries if defendant were able to point to any that demonstrated the possibility of poor billing judgment, unnecessary work or duplication of effort. However, defendant's only challenges are that the hours are not adequately documented; they are charged in quarter-hour increments rather than in tenths of an hour; the time was "block billed"; many entries are too vague to provide any meaningful information about the activities performed; and some of the time billed was for lawyer conferences.

The only examples of block billing that defendant gives are two on February 10, 2005. In the first, Cindy Ahn charged seven hours for meeting with her colleague, Tom Pasternak,

7

to review the progress of the case; preparing for the claim construction briefing; reviewing the prosecution history of the patents; and meeting with Christine Duh. In the second example, Christine Duh charged 4.25 hours for conducting a review of documents, working on claim construction, conferring with Ahn and drafting a letter to opposing counsel concerning a discovery request. Neither of these two entries is vulnerable to the criticism that defendant levels against it. The nature of the work is explained clearly; none of it appears on its face to have been unnecessary.

    Defendant objects to a billing on March 10, 2005, for time that lawyers spent conferring with each other, but it is inherent in the nature of a complex case that the lawyers performing different tasks have to meet and exchange information, plan their prosecution strategy and assign tasks. Nothing in this example suggests that the conferences were unnecessary or over-staffed. Billing for conferences is not improper in and of itself; it becomes improper only when the conferences are more numerous or extended than necessary or when the case is too simple and straightforward to warrant any but the briefest of conferences. Moreover, plaintiff's counsel has reduced its charges overall by 10% to avoid any possibility of overbilling for duplicate services. (It has reduced the bill by $20,000, as well, because defendant had to pay plaintiff this amount as sanction for discovery violations, and by $130,000 that it believes is not so closely tied to the trial in this case that it should be defendant's responsibility.)

It was not improper or suspect for plaintiff to bill in quarter-hour increments. Doing so does not render its bill excessive. Moreover, its entries are not so vague as to be questionable. It is clear from looking at them that they describe the work in adequate detail to permit an informed review.

Fourth, defendant contends that plaintiff is trying to recover fees and expenses that are not properly recoverable because they were incurred for non-secretarial, non-lawyer personnel, including summer associates, or they relate to clerical tasks, time to set up a remote office in Wisconsin, clerical tasks that are not reimbursable, excessive numbers of hotel rooms and inadequate documentation for meals, airline fares and other travel expenses. The "lack of documentation" criticism is specious. The itemized billing shows in detail what was spent and for what reason.

Section 285 permits the prevailing party to recover disbursements that were necessary for the case. Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1069 (Fed. Cir. 1983). This includes paralegal work and clerical services, if they were billed separately. Charter Oak Fire Insurance Co. v. Hedeen & Cos., 280 F.3d 730, 738-39 (7th Cir. 2002); Mathis v. Spears, 857 F.2d 749, 759 (7th Cir. 1988).

Moreover, it was not unreasonable for plaintiff to book extra hotel rooms for work space; doing so is standard operating procedure for trials much less complex than this one. (It is worth noting that plaintiff has applied its 10% reduction to its costs as well as to its

9

fees.)

In summary, I conclude that defendant has failed to show that plaintiff's request for attorney fees and non-taxable costs is excessive in light of the work performed and the effort required for the successful prosecution of this suit or that plaintiff's fees and costs are inadequately substantiated.

ORDER

IT IS ORDERED that plaintiff Third Wave Technologies, Inc. is AWARDED attorney fees and non-taxable costs in the amount of $4,244,636.00.

Entered this 21st day of February, 2006.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge